TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION : | |
| : | No. 90-943 |
| of : | |
| : | October 8, 1991 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| RODNEY O. LILYQUIST : | |
| Deputy Attorney General : | |
| : | |

_____

THE HONORABLE DAVID ROBERTI, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

May a charter city prohibit former and retired city employees from serving on the city's civil service commission without violating the equal protection, due process, and freedom of expression provisions of the California Constitution?

CONCLUSION

A charter city may prohibit former and retired city employees from serving on the city's civil service commission without violating the equal protection, due process, and freedom of expression provisions of the California Constitution.

ANALYSIS

Subdivision (a) of section 2 of article I of the California Constitution states:

"Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Subdivision (a) of section 7 of the same article provides: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. . . ."

The question presented for resolution is whether these constitutional provisions would be violated by a charter city prohibiting former and retired city employees from serving on the city's civil service commission. We conclude that such a prohibition would be constitutional.

While a charter city has broad powers over its internal affairs, such as establishing the qualifications for its appointive offices (see *Ector v. City of Torrance* (1973) 10 Cal.3d 129, 132-

1. 90-943

133), it must act in accordance with constitutional requirements. (See *Johnson v. Hamilton* (1975) 15 Cal.3d 461 [charter's residency requirement for candidates for elective offices ruled unconstitutional]; *Bay Area Women's Coalition v. City and County of San Francisco* (1978) 78 Cal.App. 3d 961 [five-year residency required for persons appointed to boards and commissions ruled unconstitutional].) As the Court of Appeal recently summarized in *City of Fresno v. Pinedale County Water Dist.* (1986) 184 Cal.App.3d 840, 844-845:

> "The California Constitution provides that a city may adopt a charter giving it the power to `make and enforce all ordinances and regulations in respect to *municipal affairs*, ... City charters adopted pursuant to this Constitution ... and with respect to municipal affairs shall supersede all laws inconsistent therewith.' (Cal.Const., art. XI, § 5, subd. (a), italics added.) Thus, on municipal affairs (matters of internal or local concern) the city charter is paramount to any inconsistent laws on the subject enacted by the Legislature, subject to basic constitutional limitations. [Citations.]"

Cities are not required to have civil service commissions. We are informed that if they do have one, it is an administrative review body comprised of persons who are appointed by the city council. The commissioners hear appeals concerning the dismissal, suspension, and demotion of city employees. The decisions of the commission are binding on the city but are reviewable by a court.

1. EQUAL PROTECTION

Pursuant to the guarantees set forth in section 7 of article I of the Constitution, "no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property, and in their pursuit of happiness." (*People v. Romo* (1975) 14 Cal.3d 189, 196.) "The purpose of the [equal protection] clause is to secure every person against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." (*Hinman v. Department of Personnel Admin.* (1985) 167 Cal.App.3d 516, 525.)

However, "[t]his principle of `equal protection' ... `does not preclude the state from drawing any distinctions between different groups of individuals.'" (*In re King* (1970) 9 Cal.3d 226, 232.) "[T]he equal protection clause does not require `absolute equality' [citation], is not `a demand that a statute necessarily apply equally to all persons' [citation] and permits a state to `provide for differences so long as the result does not amount to ... an "invidious discrimination."' [Citation.]." (*In re Antazo* (1970) 3 Cal.3d 100, 110.)

"`Generally, to satisfy equal protection requirements the legislative classification need only rationally relate to a conceivable, legitimate state purpose ....'" (*Lucas v. Superior Court* (1988) 203 Cal.App.3d 733, 738, see *Vehicular Residents Assn. v. Agnos* (1990) 222 Cal.App.3d 996, 999.) Only if the "scheme imposes a suspect classification ... or a classification which infringes on a fundamental interest ... [must] the classification ... be closely scrutinized and may be upheld only if it is necessary for the furtherance of a compelling state interest." (*Weber v. City Council* (1973) 9 Cal.3d 950, 958-959; see *Johnson v. Hamilton, supra,* 15 Cal.3d 461, 466.)

The classification made here by the city's prohibition involves former and retired city employees. These persons do not constitute a suspect classification. (See *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 585 [treating police and fire department employees different from other city employees upheld]; *Rittenband v. Cory* (1984) 159 Cal.App.3d 410, 419 [examples of suspect classifications are national origin or alienage and gender]; *Bay Area Women's Coalition*

*v. City and County of San Francisco, supra,* 78 Cal.App.3d 961, 966 [recent city residents are not a suspect class, which is one that "has been `saddled with such disabilities, or subjected to such history of purposeful unequal treatment' as to justify extraordinary protection"].)

At one time it may have been argued that the appointment to a city board or commission affected a fundamental right so as to require application of the strict scrutiny test. (See *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 720; *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 335; *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418.) Recently, however, the courts have treated the appointment to public office, standing alone, as not constituting a fundamental right, utilizing the test of "strict scrutiny only where barriers to candidacy have a real and appreciable impact upon other fundamental rights, such as the right to vote." (*Rittenband* v. *Cory* (1984) 159 Cal.App.3d at 421; see *Friendly* v. *Eu* (1982) 131 Cal.App.3d 100, 104; *Bay Area Women's Coalition* v. *City and County of San Francisco, supra*, 78 Cal.App.3d at 966-968; see also *American Party of Texas* v. *White* (1974) 415 U.S. 767, 780, fn. 11; *Bullock* v. *Carter* (1972) 405 U.S. 134, 143-144; *Johnson* v. *Hamilton, supra*, 15 Cal.3d at 466; *Bill* v. *Williams* (1977) 70 Cal.App.3d 531, 535; *DeBottari* v. *Melendez* 44 Cal.App.3d 910, 915-916.) Since no "other fundamental rights" are significantly impacted here, the strict scrutiny test does not control our inquiry.

Applying the appropriate test, then, the issue is whether excluding former and retired employees from serving on the city's civil service commission is rationally related to a conceivable, legitimate government interest. We are informed that the prohibition was adopted to prevent the appearance of favoritism and personal bias when the commission reviews administrative disciplinary actions. The city is assured that in this sensitive area of employment relations, the decisions regarding appeals by employees will be made by a neutral body in a fair and impartial manner.

Undoubtedly a legitimate government purpose is the fostering of public trust and confidence in a city's administrative review process. (See *Wall v. Municipal Court* (1990) 223 Cal.App.3d 247, 250 ["The possibility that citizen confidence in the adjudication of ... cases increases ... is sufficient to justify the ... requirement here"]; *Witt v. Morrow* (1977) 70 Cal.App.3d 817, 823 ["It is not just actual improprieties which the law seeks to forestall but also the appearance of possible improprieties"].)

Significantly, the city's prohibition may be upheld even though former and retired employees do not have personal knowledge of each current employee and supervisor. (See *City of Los Angeles v. Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1024 ["'"Legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality"'"]; *Rittenband v. Cory, supra*, 159 Cal.App.3d 410, 427 ["The evidence that a statute ... is both over-inclusive and under-inclusive ... warrants only the conclusion that such a statute will sometimes work unfairly and is, perhaps, unwise. Such a statute may not be set aside on constitutional grounds, however, if any basis reasonably may be conceived to justify it"]; *Park & Shop Markets, Inc. v. City of Berkeley* (1981) 116 Cal.App.3d 78, 92 ["`Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, ... they cannot prevail so long as "it is evident from all the considerations ... that the question is at least debatable"'"].) Accordingly, we believe that the prohibition in question would not violate the appropriate test of California's equal protection provision.

## 2. DUE PROCESS

The same result must be reached with respect to California's due process constitutional provision, since the standards that must be met are similar. "The cardinal principle of substantive due process is that a law which deprives a person of life, liberty or property must not be the product

of arbitrary legislative judgment. Such a law must be reasonably related to the object sought to be obtained by its enactment." (*Loska v. Superior Court* (1986) 188 Cal.App.3d 569, 580; accord, *Lopez v. McMahon* (1988) 205 Cal.App.3d 1510, 1518; see *People v. Armstrong* (1985) 163 Cal.App.3d 660, 664.) "So long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and desirability of, the enactment are for the Legislature." (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 369.) "The wisdom of the legislation is not an issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398.)

Without regard, therefore, to whether a "life, liberty or property" interest is involved here or required for purposes of a due process constitutional claim, we find that the prohibition against former and retired city employees is reasonably related to the object of public confidence in the administrative review of city disciplinary actions.

### 3. FREEDOM OF EXPRESSION

Finally, as to whether the city's prohibition would unconstitutionally "restrain or abridge liberty of speech," we first note that the prohibition has no effect upon the right of former and retired employees to run for public office or be appointed to any board or commission other than the city's civil service commission. It does not prevent them from attending and expressing their views at a civil service commission meeting. It does not "`restrict expression because of its message, its ideas, its subject matter, or its content.'" (*McCollum v. CBS, Inc.* (1988) 202 Cal.App.3d 989, 999.)

Freedom of expression is clearly a fundamental and broadly encompassing right under the Constitution. It is one of the rights that is "accorded a preferred place in our democratic society." (*Olivia N. v. National Broadcasting Co.* (1981) 126 Cal.App.3d 488, 492.) It protects "`citizen participation in, and ultimate control over, government affairs.'" (*Spiritual Psychic Science Church v. City of Azusa* (1985) 39 Cal.3d 501, 512.) "`"[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."'" (*Hofmann Co. v. E.I. DuPont de Nemours Co.* (1988) 202 Cal.App.3d 390, 406.)

However, we have found no case applying these general principles in a manner that would suggest a person may not be excluded from serving on an appointive city commission due to a government interest in promoting impartiality in the decision making process. For example, a person does have a freedom of expression right with respect to effective participation in the *electoral* process, but even here the restriction on the right to vote must be examined in light of the justification asserted by the government, and any question of its wisdom must be left to the legislative body. (See *Anderson v. Celebrezze* (1983) 460 U.S. 780, 786, fn. 7; *Storer* v. *Brown* (1974) 415 U.S. 724, 728-735; *United States v. South-Eastern Underwriters Ass'n* (1944) 322 U.S. 533, 562; *Erum v. Cayetano* (9th Cir. 1989) 881 F.2d 689, 692; *Service Employees v. Fair Political Practices* (E.D.Cal. 1990) 747 F.Supp. 580, 584.)

Having determined that the city's prohibition meets equal protection and due process requirements, we are satisfied that it meets the freedom of expression standard as well. For purposes of the latter constitutional right, the city's prohibition is similar to the prohibitions upheld in *Adams v. Superior Court* (1974) 12 Cal.3d 55 [one-year residency required for jury duty], *Ector v. City of Torrance, supra*, 10 Cal.3d 129 [city residency required for city employees], and *Wall v. Municipal Court, supra*, 223 Cal.App.3d 247 [district residency required for court commissioners]. In each case persons were excluded from performing public services without violation of their freedom of expression rights.

In answer to the question presented, therefore, we conclude that a charter city may prohibit former and retired city employees from serving on the city's civil service commission without violating the equal protection, due process, or freedom of expression provisions of the California Constitution.

* * * * *