[No. H037145. Sixth Dist. May 24, 2012.]

BOY SCOUTS OF AMERICA NATIONAL FOUNDATION et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
JOHN DOE I et al., Real Parties in Interest.

432

COUNSEL

Sedgwick and Nicholas Heldt for Petitioners.

Armstrong & Associates, Katherine L. Glenn; O'Donnell Clark & Crew, Gilion Claire Dumas; Law Offices of Anthony M. DeMarco and Anthony Michael DeMarco for Real Parties in Interest.

OPINION

**BAMATTRE-MANOUKIAN, J.—**

## I.  INTRODUCTION

Real parties in interest John Doe 1, John Doe 2, and John Doe 3 are brothers who allege that they were sexually molested from 1977 to 1987 by William "Bill" E. Knox,[1] their stepfather and a leader of their church Boy Scout troop. In 2009, at ages 43, 42 and 39, respectively, they filed an action against Knox and the Mormon Church,[2] as well as the Boy Scouts of America National Foundation and the Pacific Skyline Council, Boy Scouts of America (hereafter, collectively the Boy Scouts) in which they alleged that the Boy Scouts were liable under various tort theories for the psychological injuries they suffered as adults due to childhood sexual abuse.[3]

---

[1] Defendant William E. Knox is not a party to this original proceeding.

[2] The Mormon Church defendants include the Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-day Saints and the Corporation of the President of The Church of Jesus Christ of Latter-day Saints (hereafter, collectively the Mormon Church). The Mormon Church defendants are not parties to this original proceeding.

[3] We recognize that Code of Civil Procedure section 340.1, subdivision (m) may apply in this case. That subdivision provides that in an action filed by a plaintiff who is 26 years of age or older, "no defendant may be named except by 'Doe' designation in any pleadings or papers filed in the action until there has been a showing of corroborative fact as to the charging

The Boy Scouts demurred to the second amended complaint on the ground that the action was time-barred under Code of Civil Procedure section 340.1, subdivision (b)(1).[4] Section 340.1 provides the limitations periods for civil actions arising from childhood sexual abuse. Subdivision (b)(1), with one exception not relevant here, bars claims of negligent or intentional wrongdoing by a nonperpetrator "person or entity" after the plaintiff's 26th birthday. (§ 340.1, subd. (b)(1).) The trial court sustained the demurrers without leave to amend as to all causes of action, except the demurrer to the fifth cause of action for intentional infliction of emotional distress, which the court overruled.

The Boy Scouts filed a petition for a writ of mandate directing the trial court to vacate that portion of its order overruling the demurrer to the fifth cause of action for intentional infliction of emotional distress, arguing that the court had erred in determining that the fifth cause of action was timely under the delayed discovery provision of section 340.1, subdivision (a)(1). The Boy Scouts contend that the section 340.1, subdivision (a)(1) delayed discovery provision applies only to actions against individual perpetrators of childhood sexual abuse, not corporate entities like the Boy Scouts.

After we heard oral argument in this matter, the California Supreme Court issued its decision in *Quarry v. Doe I* (2012) 53 Cal.4th 945 [139 Cal.Rptr.3d 3, 272 P.3d 977] (*Quarry*), which addressed section 340.1. We requested supplemental briefing from the parties discussing the *Quarry* decision. Counsel for John Doe 1, John Doe 2, and John Doe 3 advised us in their supplemental letter brief that due to the *Quarry* decision they had filed in the trial court a request for dismissal with prejudice of the fifth cause of action for "Procurement under Penal Code Section 266j," which is captioned the fifth cause of action for "Intentional Infliction of Emotional Distress" in the second amended complaint.

■  Although the dismissal with prejudice of the fifth cause of action will render the writ petition moot, we will exercise our discretion to retain this original proceeding and decide the question presented. Where, as here, " 'an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' [Citations.]" (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746–747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; see *Santa Clara*

---

allegations against that defendant." (Code Civ. Proc., § 340.1, subd. (m).) Since the pleadings filed in the trial court and the record filed in this court in this original proceeding have identified defendants by their names, we will do the same.

[4] All statutory references hereafter are to the Code of Civil Procedure, unless otherwise indicated.

*Valley Transportation Authority v. Public Utilities Com.* (2004) 124 Cal.App.4th 346, 355–356 [21 Cal.Rptr.3d 270]; *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 385 [100 Cal.Rptr.2d 807].)

## II. FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the second amended complaint, since we must assume the truth of the properly pleaded factual allegations in reviewing an order overruling a demurrer. (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971–972 [114 Cal.Rptr.2d 748] (*Guardian North Bay*).)

John Doe 1 was born in 1966, John Doe 2 was born in 1967, and John Doe 3 was born in 1970 (hereafter, collectively plaintiffs). In 1977, plaintiffs lived with their mother and older brothers in California. John Doe 1, John Doe 2, and their mother were baptized as members of the Mormon Church in the same year. The family then became members of a ward (congregation) of the Mormon Church. John Doe 3 was baptized later, in 1978.

As the plaintiffs reached the proper age, they became members of the ward's Boy Scout troop. The troop leader, Bill Knox, was a single male approximately 34 or 35 years old. In 1977 or 1978, Knox and plaintiffs' mother were members of the Mormon Church's "Special Interest" singles program, which encouraged marriage among its members. The Mormon Church also "assigned Bill Knox to 'befriend' Plaintiffs' mother" and he also "befriended" plaintiffs shortly after meeting them. Additionally, Knox was appointed "Single Adult Leader" to plaintiffs' mother and "Senior Home Teacher Companion" to plaintiffs and their family, although the church knew or should have known of Knox's "pedophilia activities." He also began to date plaintiffs' mother.

According to plaintiffs, "Knox used his position within the Mormon Church and Boy Scouts to encourage Plaintiffs to know about the Mormon Church and to become good members so that he could gain Plaintiffs' trust, admiration, friendship and obedience." After gaining plaintiffs' trust, Knox "entice[d]" them to individual " 'sleepovers' " at his apartment. During the sleepovers, Knox sexually molested plaintiffs. He first molested John Doe 1 in 1977 and later molested John Doe 2 and John Doe 3 in 1978. Knox sexually abused them "in the context of Scouting events" and in buildings and locations owned or operated by the Mormon Church and the Boy Scouts.

Knox married plaintiffs' mother in 1979. After moving into plaintiffs' home, Knox's sexual abuse escalated. Among other things, Knox sexually abused plaintiffs during trips between their home and Boy Scout activities

and during Boy Scout camping trips. In 1980, Knox "was 'called' by the Mormon Church to become the Scoutmaster of the Boys Scouts of America Troop for the Ward."

In 1982, plaintiffs began repeatedly informing the Mormon Church and the Boy Scouts that Knox was sexually abusing them. Knox stopped sexually abusing John Doe 1 during 1982. He did not stop sexually abusing John Doe 2 until 1986, and in 1987 he stopped sexually abusing John Doe 3. As a result of the sexual abuse, plaintiffs began to suffer mental, psychological, and emotional problems.

In December 2008, plaintiffs learned that Knox was going to move near the homes of John Doe 1 and John Doe 2 in another state. This caused them to openly discuss Knox's sexual abuse with family members and to realize for the first time that their current physical, psychological and emotional injuries were caused by the sexual abuse. Plaintiffs' delayed discovery of the cause of their injuries was due to their young age at the time of the sexual abuse and their trust in Knox, as well as their manipulation by the Mormon Church and Boy Scouts.

## III.  PROCEDURAL BACKGROUND

### A.  *The Complaint*

Plaintiffs filed their original complaint on November 2, 2009, and their first amended complaint on November 16, 2009.[5] The Boy Scouts demurred to the first amended complaint on the ground that all causes of action were time-barred under section 340.1, since plaintiffs had not filed their complaint before the age of 26. The trial court agreed in its October 29, 2010 order that plaintiffs had not met the filing deadline, but sustained the demurrers with leave to amend to allow plaintiffs to "include the applicability of legal doctrines that would defeat the statute of limitations defense that currently appears on the face of the first amended complaint."

Plaintiffs then filed a second amended complaint, which is the currently operative pleading. The causes of action alleged against the Boy Scouts include negligence (failure to investigate), negligence per se, vicarious liability for sexual battery, vicarious liability for assault, direct and vicarious liability for intentional infliction of emotional distress, premises liability, negligence (failure to warn), constructive fraud, and "institutional constructive fraud."

---

[5] Both the original complaint and the first amended complaint were filed in San Francisco County Superior Court. By order of April 13, 2010, the matter was transferred to the Santa Clara County Superior Court.

B. *The Boy Scouts' Demurrer*

The Boy Scouts filed a demurrer to the second amended complaint (hereafter, the complaint) on December 10, 2010. In their points and authorities, they argued that the face of the complaint showed that all causes of action were time-barred under section 340.1, subdivision (b)(1) because the complaint was filed after the plaintiffs' 26th birthday and insufficient facts had been alleged to show that defendants should be estopped from relying on the statute of limitations.

The Boy Scouts also argued that to the extent plaintiffs had attempted to avoid the bar of section 340.1, subdivision (b)(1) by alleging that the Boy Scouts were perpetrators to whom the delayed discovery provision of section 340.1, subdivision (a)(1) applied, the allegations were insufficient.

Alternatively, the Boy Scouts asserted that subdivision (a)(1) of section 340.1 was inapplicable because that subdivision expressly applies only to a "person," while subdivision (b)(1) of section 340.1, which bars certain actions after the plaintiff's 26th birthday, expressly applies to a "person or entity." The Boy Scouts maintained that the legislative history for section 340.1 showed that the Legislature did not intend the delayed discovery provision of section 340.1, subdivision (a)(1) to apply to a claim of negligent or intentional wrongdoing against a nonperpetrator corporate entity such as the Boy Scouts.

C. *Opposition to the Demurrer*

In opposition to the Boy Scouts' demurrers, plaintiffs argued that the Boy Scouts should be considered perpetrators of childhood sexual abuse because they either directly or through their agents engaged in criminal child procurement under Penal Code section 266j.[6] Therefore, according to plaintiffs, their complaint was timely filed in 2009 under the statute of limitations for actions against perpetrators of childhood sexual abuse, section 340.1, subdivision (a)(1), less than three years after they discovered in 2008 that childhood sexual abuse was the cause of their adult psychological injuries. Plaintiffs explained that section 340.1, subdivision (a)(1) was the applicable statute of limitations, although that subdivision expressly applies only to "a person," because section 17 provides that when the word "person" is used in the Code of Civil Procedure, it " 'includes a corporation as well as a natural person.' " (Fn. omitted.)

---

[6] Section 340.1, subdivision (e), provides in part: " 'Childhood sexual abuse' as used in this section includes any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by Section 266j of the Penal Code . . . ."

Alternatively, plaintiffs contended that the Boy Scouts should be estopped from asserting a statute of limitations defense because the complaint alleged that defendants promised to help plaintiffs and ordered them to remain silent, thereby preventing them from timely filing their action.

### D. *The Trial Court's Order*

In its order of May 18, 2011, the trial court rejected plaintiffs' estoppel argument and sustained the Boy Scouts' demurrers without leave to amend as to all causes of action except the demurrer to the cause of action for intentional infliction of emotional distress, which the court overruled.

The trial court determined that the complaint "is barred by the [section 340.1, subdivision (b)(1)] statute of limitations unless . . . [the] Boy Scouts are direct perpetrators and subject to the extended time period in [section] 340.1, subdivision (a)(1)." The court also determined that the Boy Scouts could be considered direct perpetrators capable of committing the childhood sexual abuse proscribed by Penal Code section 266j (providing a child to another for lewd acts) because the statutory definition of a "person" includes corporations (§ 17, subd. (a); Pen. Code, § 7). For that reason, the trial court ruled that plaintiffs could timely bring a claim against the Boy Scouts "for their acts based on their status as perpetrators . . . ."

The trial court further ruled that "[c]auses of action for . . . Boy Scouts' negligent conduct or causes of action based on : . . Boy Scouts' employment or agency relationship with Bill Knox remain a Section 340.1, subdivision (a)(2) or (a)(3) claim which this Court has previously held to be barred by the statute of limitations because they were not brought before Plaintiffs' 26th birthdays. [Citation.] The only cause of action that asserts liability for . . . Boy Scouts' intentional acts is the fifth cause of action for intentional infliction of emotional distress. This is the only cause of action that can be considered a Section 340.1, subdivision (a)(1) claim and it is therefore the only cause of action that is not time-barred. [Citation.]"

### E. *Writ Proceedings*

The Boy Scouts filed a petition for a writ of mandate, prohibition, or other appropriate relief in this court. They sought a writ of mandate directing the superior court to vacate that portion of the trial court's order of May 18, 2011, overruling their demurrer to the fifth cause of action for intentional infliction of emotional distress and to enter a new order sustaining the demurrer to all causes of action.

Plaintiffs filed preliminary opposition to the petition, to which the Boy Scouts replied. We issued an order to show cause why a peremptory writ

should not issue as requested in the petition for a writ of mandate and provided an opportunity for further briefing and oral argument. We now turn to our discussion of the merits of the petition.

## IV. DISCUSSION

In their petition, the Boy Scouts contend that the trial court erred in overruling their demurrer to the fifth cause of action for intentional infliction of emotional distress because the complaint was not timely filed before plaintiffs' 26th birthdays as required by section 340.1, subdivision (b)(1) for a civil action against an entity arising from allegations of childhood sexual abuse. Before considering the Boy Scouts' contentions, we will address the propriety of writ review and outline the applicable standard of review.

### A. *Propriety of Writ Review*

■ "An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182 [123 Cal.Rptr.2d 637].)

In the present case, writ review is warranted for both reasons. The petition raises a significant issue regarding whether the three-year delayed discovery limitations period provided by section 340.1, subdivision (a)(1) for "[a]n action against any person for committing an act of childhood sexual abuse" applies to an action brought against an entity defendant after the plaintiff's 26th birthday. Additionally, resolution of the issue in the Boy Scouts' favor would have resulted in a final disposition as to the Boy Scouts.

### B. *Standard of Review*

"The standard of review for an order overruling a demurrer is de novo. The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. [Citation.]" (*Guardian North Bay, supra*, 94 Cal.App.4th at p. 971.)

The Boy Scouts demurred to the fifth cause of action for intentional infliction of emotional distress on the ground that the complaint was time-barred. The California Supreme Court has instructed that " ' "[a] demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the

complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]" [Citation.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920]; see Code Civ. Proc., § 430.30, subd. (a).)

Our determination of whether the Boy Scouts' demurrer was properly overruled by the trial court requires us to construe the pertinent provisions of the statute of limitations provided by section 340.1. We will therefore begin our evaluation of the merits of the Boy Scouts' demurrer with an overview of the statute.

### C.  *Section 340.1*

"Historically, claims of childhood sexual abuse were governed by a one-year statute of limitations. ([Former §] 340, subd. (3).) Because the statute was tolled until the person entitled to bring the action reached the age of majority, a person alleging childhood sexual abuse generally had one year—unless another exception applied—from the time he or she became an adult to file the action. (See [§] 352, subd. (a).)" (*Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 385 [64 Cal.Rptr.2d 53] (*Tietge*).)

"In 1986 the Legislature enacted [section] 340.1, a special statute enlarging the limitations period to three years for sexual abuse of a child under the age of fourteen by a household or family member. . . . Thus, actions brought against nonfamily members—such as a scout master or the Boy Scouts— were still governed by the one-year statute of limitations. [Citation.]" (*Tietge, supra,* 55 Cal.App.4th at p. 385.) The Legislature's intent in enacting section 340.1 was to "allow victims of childhood sexual abuse 'a longer time period in which to become aware of their psychological injuries and remain eligible to bring suit against their abusers.' [Citation.]" (*Tietge,* at p. 387.)

"In 1990 . . . the Legislature completely rewrote [section] 340.1. Among the many changes it made, subdivision (a) now provided that: 'In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later.' (Stats. 1990, ch. 1578, § 1, p. 7550.)" (*Tietge, supra,* 55 Cal.App.4th at p. 385.) Thus, "[t]he amendment . . . *created its own statutory delayed discovery rule* . . . ." (*Quarry, supra,* 53 Cal.4th at p. 963.) "The definition of childhood sexual abuse was also broadened to include 'any act committed by the defendant against the

plaintiff which would have been proscribed' by provisions in the Penal Code dealing with substantial sexual conduct against minors [including Penal Code section 266j]." (*Tietge, supra,* at p. 385.)

In 1994, section 340.1 was amended again, but "the amendments did not render the statute applicable to third party defendants . . . ." (*Quarry, supra,* 53 Cal.4th at p. 964.) Third party defendants were included in the scope of section 340.1 for the first time when the statute was amended in 1998. (*Quarry,* at pp. 965–966.) Before that amendment, the appellate courts had ruled that "the liberalized statute of limitations for victims of childhood sexual abuse . . . applies only to causes of action against an individual perpetrator. [Citation.]" (*Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 609–610 [79 Cal.Rptr.2d 73], fn. & citation omitted; see *Debbie Reynolds Prof. Rehearsal Studios v. Superior Court* (1994) 25 Cal.App.4th 222, 231 [30 Cal.Rptr.2d 514] (*Debbie Reynolds Prof. Rehearsal Studios*).) "In 1998, the Legislature expanded the limitations period for actions against entities that employed or supervised abusers until three years from the date the plaintiff discovers that psychological injury occurring after age 18 was due to childhood sex abuse, but no later than the plaintiff's 26th birthday. (§ 340.1, subd. (a)(2)–(3); [Citation]." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 175 [52 Cal.Rptr.3d 762].) Thus, "the 1998 amendment imposed an *absolute bar* against instituting a lawsuit against third party defendants once the plaintiff reached the age of 26." (*Quarry, supra,* 53 Cal.4th at p. 966.)

Most recently, in 2002, the Legislature amended section 340.1 to provide an exception to the age 26 limit for actions against a third party defendant. (Stats. 2002, ch. 149, § 1, p. 752.) "This exception was adopted to apply to claims against a subcategory of the third party defendants that already had been defined in section 340.1, subdivision (a)(2) and (3). Thus, in 2002 the Legislature added subdivision (b)(2) to section 340.1 . . . the new subdivision provides: 'This subdivision [(referencing subd. (b)(1), declaring third party claims to be timely solely if they are brought prior to the plaintiff's 26th birthday)] does not apply if the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person . . . .' " (*Quarry, supra,* 53 Cal.4th at pp. 968–969.)

In the present case, plaintiffs have not argued that the section 340.1, subdivision (b)(2) exception to the age 26 limit for actions against a third party defendant applies to their claim against the Boy Scouts. We therefore turn to the current provisions of section 340.1, subdivision (a)(1), (2), and (3), and subdivision (b)(1), that are at issue in this case: "(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, the time

for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later, for any of the following actions: [¶] (1) An action against *any person* for committing an act of childhood sexual abuse. [¶] (2) An action for liability against *any person* or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (3) An action for liability against *any person or entity* where an intentional act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (b)(1) *No action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday.*" (Italics added.)

### D. *Analysis*

#### 1. *The Parties' Contentions*

The Boy Scouts argue that the language of section 340.1, as amended in 1998, limits "claims against perpetrators to claims against a 'person' (subd. (a)(1)), whereas claims against an 'entity,' based either on negligent conduct (subd. (a)(2)) or on intentional conduct (subd. (a)(3)), are subject to different periods of limitation." They further explain that "[a]lthough the word 'person' in other contexts may include a corporation, use of the word 'person' in this statutory scheme is clearly distinguished from the word 'entity,' particularly where the statute refers in subdivisions (a)(2) and (a)(3) to 'person or entity' in the disjunctive." Emphasizing that the Legislature intended to make a distinction between persons and entities when it amended section 340.1 in 1998, the Boy Scouts also argue that interpreting the word "person" in subdivision (a)(1) to include corporations would improperly render the word "entity" in subdivision (a)(2) and (3) surplusage.

Alternatively, the Boy Scouts contend that plaintiffs cannot state a claim against the Boy Scouts as perpetrators of childhood sexual abuse within the meaning of section 340.1, subdivision (a)(1). They point out that the crime of aiding and abetting is not included in the statutory definition of childhood sexual abuse found in section 340.1, subdivision (e). Although the Boy Scouts recognize that the Penal Code section 266j crime of providing a child to another for lewd acts is included in the definition of childhood sexual abuse provided by section 340.1, subdivision (e), they note that section 266j was not added to the Penal Code until 1981, after Knox had married plaintiffs' mother and moved into their home.

The Boy Scouts further argue that even if plaintiffs have sufficiently alleged that the Boy Scouts are perpetrators of childhood sexual abuse under Penal Code section 266j, their claim of intentional infliction of emotional distress "is a claim of intentional wrongdoing against an 'entity' that falls within [section] 340.1(a)(3) and does not fall within [section] 340.1(a)(1) because it is not a claim against a 'person.' As a claim under [subdivision] (a)(3) it cannot be brought after . . . plaintiffs' 26th birthday."

Plaintiffs respond that the trial court correctly applied the three-year delayed discovery rule provided by section 340.1, subdivision (a)(1) and found that the claim of intentional infliction of emotional distress was timely filed against the Boy Scouts, for several reasons: (1) the Boy Scouts are considered "persons" under the criminal law when acting through their agents; (2) section 340.1, subdivision (a)(1) applies to all "persons" who violate Penal Code section 266j; (3) it was not necessary for the Legislature to include the word "entity" in section 340.1, subdivision (a)(1) for that subdivision to apply to a perpetrator corporation; and (4) at least two plaintiffs were abused after the 1981 effective date of Penal Code section 266j.

Additionally, plaintiffs rely on the statutory definition of "person" in section 17, which includes a corporation as well as a natural person. They argue that "there is nothing to suggest that the intended meaning of 'persons' in [subdivision (a)(1)]—in contrast with 'persons or entities' in [subdivision (a)(2)] and [subdivision (a)(3)]—was meant to specifically exempt all non-natural persons from the scope of [subdivision (a)(1)]." Plaintiffs also argue that the section 17 definition of "person" should apply in interpreting section 340.1, subdivision (a)(1) in light of the Legislature's intent in enacting section 340.1 to " 'expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries,' [citation]."

Plaintiffs therefore contend that their claim for intentional infliction of emotional distress was timely filed under section 340.1, subdivision (a)(1) and the Boy Scouts' petition for writ of mandate should be denied.

### 2. *Statutory Interpretation*

Since plaintiffs' claim of intentional infliction of emotional distress against the Boy Scouts was not filed before their 26th birthdays, plaintiffs implicitly concede that if section 340.1, subdivision (b)(1) applies, their claim is time-barred. The key issue, therefore, is whether the delayed discovery provision of section 340.1, subdivision (a)(1) may be construed to expand the time for plaintiffs to bring their claim of intentional infliction of emotional distress against the Boy Scouts beyond the age of 26, until three years after

plaintiffs discovered, or reasonably should have discovered, that their adult-onset psychological injuries were the result of childhood sexual abuse, even though subdivision (a)(1) expressly refers only to "any person." The parties have not directed our attention to any appellate decisions construing subdivision (a)(1) with respect to an entity defendant.

Since statutory interpretation and the application of a statute are questions of law, we will review the trial court's interpretation of section 340.1, subdivision (a)(1) under the de novo standard of review. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81 [70 Cal.Rptr.3d 88].) In performing our independent review, we apply well-settled rules of statutory interpretation.

"[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

Additionally, " '[w]e examine the history and background of the statutory provision in order to ascertain the most reasonable interpretation of the measure.' [Citation.]" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559].) Even where the plain language of the statute dictates the result, the legislative history may provide additional authority confirming the court's interpretation of the statute. (*Id.* at p. 544.)

### 3. *The Claim Is Time-barred*

We will begin our statutory interpretation by examining the pertinent provisions of section 340.1: "(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of

majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later, for any of the following actions: [¶] (1) An action against *any person* for committing an act of childhood sexual abuse. [¶] (2) An action for liability against *any person or entity* who owed a duty of care to the plaintiff, where a wrongful or negligent act by that *person or entity* was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (3) An action for liability against *any person or entity* where an intentional act by that *person or entity* was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff. [¶] (b)(1) *No action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday.*" (Italics added.)

■ We find the use of the word "or" in the phrase "person or entity" in subdivision (a)(2) and (3) of section 340.1 to be crucial to our interpretation of the word "person" in subdivision (a)(1). "The plain and ordinary meaning of the word 'or' is well established. When used in a statute, the word 'or' indicates an intention to designate separate, disjunctive categories. [Citations.]" (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30 [115 Cal.Rptr.3d 416]; see *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191] [use of the word "or" in a statute indicates an intention to designate alternative or separate categories].)
■ We therefore determine that when the Legislature used the word "or" in the phrase "person or entity" in section 340.1, subdivision (a)(2) and (3), its intent was to designate "person" and "entity" as separate categories of defendants in a civil action arising from childhood sexual abuse.

■ Section 340.1 thus makes a distinction between a defendant "person" and a defendant "entity" for the purpose of applying the limitations periods provided in subdivision (a). The plain language of the statute indicates that only an action against "any *person* for committing an act of childhood sexual abuse" (§ 340.1, subd. (a)(1), italics added) may be brought after the plaintiff's 26th birthday, subject to the three-year delayed discovery provision (§ 340.1, subd. (a)). The statutory language also expressly provides that the 26th birthday cutoff applies to the actions against a separate category of defendant, an "entity." (§ 340.1, subds. (a)(2)–(3) & (b)(1).)

■ Additional rules of statutory interpretation further indicate that the Legislature did not intend the word "person" in section 340.1, subdivision (a)(1) to encompass an "entity." "It is a general rule of statutory construction that '[w]hen one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning.' [Citations.]" (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80 [112

Cal.Rptr.3d 722, 235 P.3d 42] (*Klein*).) And "[o]rdinarily, the enumeration of one item in a statute implies that the Legislature intended to exclude others. [Citation.]" (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 343 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*International Federation*).)

■ As we have noted, subdivision (a)(1) of section 340.1 expressly provides that the longer of two limitations periods, the plaintiff's 26th birthday or "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse," applies to one category of defendant: "any person" who committed an act of childhood sexual abuse. Subdivision (a)(1) omits the word "entity," and therefore the implication is that the Legislature intended to exclude an entity defendant from the scope of that provision. (*International Federation, supra*, 42 Cal.4th at p. 343.)

■ Thus, we agree with the Boy Scouts that when the Legislature omitted the word "entity" from subdivision (a)(1) of section 340.1, and provided the 26th birthday cutoff in subdivision (b)(1) for an action against an entity for negligent or intentional wrongdoing, the Legislature intended that no claim brought against an entity defendant under section 340.1 (other than a claim under subd. (b)(2)) may be commenced after the plaintiff's 26th birthday.

We are not convinced by plaintiffs' argument that they have sufficiently alleged that the Boy Scouts were perpetrators of childhood sexual abuse and therefore the Boy Scouts constitute a "person" within the meaning of section 340.1, subdivision (a)(1). Even assuming that plaintiffs' action was brought against the Boy Scouts in the capacity of perpetrators (whether as aiders and abettors or as child procurers under Pen. Code, § 266j), the Boy Scouts remain, as alleged in the complaint, corporate entities to which subdivision (a)(1) of section 340.1 does not apply.

We also find plaintiffs' reliance on the decision in *Joseph v. Johnson* (2009) 178 Cal.App.4th 1404 [101 Cal.Rptr.3d 248] (*Joseph*) to be misplaced because that decision does not support their argument. In *Joseph*, the plaintiff filed an action under section 340.1 alleging that her aunt's husband had committed childhood sexual abuse while he was babysitting the plaintiff. The plaintiff claimed that her aunt was liable because she had delegated the babysitting duties to her husband, which constituted making the plaintiff available for lewd acts in violation of Penal Code section 288. (*Joseph, supra*, at pp. 1408–1409.) The *Joseph* court determined that, although the plaintiff was over the age of 26, the complaint was timely filed under the three-year

delayed discovery rule of section 340.1, subdivision (a)(1) because "one who commits an act that would violate Penal Code section 266j commits childhood sexual abuse for purposes of subdivision (a)(1) of section 340.1. [Citation.]" (*Joseph*, at p. 1413.) Thus, the decision in *Joseph* did not involve an entity defendant and did not address the application of the three-year delayed discovery provision of section 340.1, subdivision (a)(1) to an action against an entity.

■ Moreover, plaintiffs' interpretation would require us to insert the word "entity" in section 340.1, subdivision (a)(1), which we may not do. It is a " 'cardinal rule of statutory construction that . . . a court must not "insert what has been omitted" from a statute.' [Citation.]" (*People v. Guzman* (2005) 35 Cal.4th 577, 587 [25 Cal.Rptr.3d 761, 107 P.3d 860].) Plaintiffs' interpretation would also require us to improperly ignore the word "entity" in subdivision (a)(2) and (3) of section 340.1. ■ It is another statutory construction principle "that courts must strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous. [Citations.]" (*Klein, supra,* 50 Cal.4th at p. 80.)

■ We are also not convinced by plaintiffs' argument that section 17's broad definition of "person" mandates an interpretation of "any person" in section 340.1, subdivision (a)(1) that includes corporate entities. Section 17, subdivision (a) provides that with respect to the Code of Civil Procedure, "the word 'person' includes a corporation as well as a natural person . . . ." We also recognize that "[w]hile a layperson would most likely think the word 'person' referred to a *natural* person, it is true that in law, the word can also mean a corporation or other legal entity." (*Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1074, fn. 14 [34 Cal.Rptr.3d 136].)

■ However, since the principles of statutory interpretation require the words of a statute to be read in context, the section 17, subdivision (a) definition of "person" does not apply where "the context otherwise requires. The critical point is the term's usage in the statute at issue, not its definition in section 17." (*Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 618, fn. 6 [225 Cal.Rptr. 651] (*Diamond View*).) In *Diamond View*, the issue was whether a limited partnership could obtain an injunction prohibiting harassment under section 527.6, which authorized "a 'person who has suffered harassment' to obtain a temporary restraining order and injunction against the harassing conduct . . . ." (*Diamond View*, at p. 616.) The court determined that, despite section 17's broad definition of "person," the statutory context and the legislative history of section 527.6 showed that "the term 'person' was meant to refer only to natural persons, and not to legal entities." (*Diamond View*, at p. 618, fn. omitted.)

█ We reach a similar result in the present case. Here, as we have discussed, the statutory context of the word "person" in section 340.1, subdivision (a)(1) includes the express distinction between "person" and "entity" set forth in the companion subdivision (a)(2) and (3). Therefore, a "person" for purposes of subdivision (a)(1) may not be defined to include an entity defendant. Our interpretation is confirmed by the legislative history of section 340.1, subdivisions (a)(1)–(3) and (b)(1). (See *Doe v. City of Los Angeles, supra*, 42 Cal.4th at p. 544.)

Subdivision (a)(1)–(3) and former subdivision (b) (now (b)(1)) were added to section 340.1 when the statute was amended in 1998. (Stats. 1998, ch. 1032, § 1, p. 7785). The corresponding Legislative Counsel's Digest states, "Existing law requires that an action for recovery of damages suffered as a result of childhood sexual abuse, as defined, be commenced within 8 years of the date the plaintiff attains the age of majority or within 3 years of the date the plaintiff discovers or reasonably should have discovered that the psychological injury or illness occurring after the age of majority was caused by sexual abuse, whichever occurs later . . . . [¶] This bill would delineate the actions based upon childhood sexual abuse to which these provisions are applicable, and provide that certain of those actions may not be commenced on or after the plaintiff's 26th birthday." (Legis. Counsel's Dig., Assem. Bill No. 1651 (1997–1998 Reg. Sess.) 6 Stats. 1998, Summary Dig., pp. 482–483.)

Additional legislative history indicates the Legislature's intent regarding the certain actions that could not be commenced on or after the plaintiff's 26th birthday. After Assembly Bill No. 1651 (1997–1998 Reg. Sess.) was introduced in 1998 to amend section 340.1, the Assembly Committee on Judiciary submitted a bill analysis stating that existing law "specifies that the extended statute of limitations in childhood sexual abuse cases under Section 340.1 does <u>not</u> apply to causes of action against non-perpetrators (e.g., employers, supervisors, religious institutions) who allegedly negligently or intentionally permitted the abuse to occur or failed to report it. ([*Tietge, supra*, 55 Cal.App.4th 382; *Debbie Reynolds Prof. Rehearsal Studios, supra*, 25 Cal.App.4th 222].)" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1651 (1997–1998 Reg. Sess.) Mar. 31, 1998, p. 2.)

Describing the changes that Assembly Bill No. 1651 (1997–1998 Reg. Sess.) would make to existing law, the March 31, 1998 bill analysis of the Assembly Committee on the Judiciary states that the amendments would permit "victims to bring actions for childhood sexual abuse under the extended statute of limitations not only against alleged perpetrators but *also against individuals or entities* who allegedly acted intentionally or negligently in permitting the abuse to occur. Specifically, <u>this bill</u>: [¶] . . . [¶] . . . Provides that the statute of limitations for actions based on injuries resulting

from 'childhood sexual abuse' shall be 8 years after the plaintiff reaches majority (i.e., 26) <u>or</u> within 3 years of the date the plaintiff discovers or reasonably should have discovered that the psychological injury or illness occurring after the age of majority was caused by the abuse, whichever occurs later." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1651 (1997–1998 Reg. Sess.) Mar. 31, 1998, pp. 1, 2, italics added.)

Subsequently, the Assembly concurred in the Senate's amendments to Assembly Bill No. 1651 (1997–1998 Reg. Sess.) that added the 26th birthday cutoff for an action against an entity. The August 25, 1998 Assembly Floor Analysis states that Assembly Bill No. 1651 "[p]ermits victims to bring actions for childhood sexual abuse under the extended statute of limitations not only against alleged perpetrators, but also against *individuals or entities* who allegedly acted intentionally or negligently in permitting the abuse to occur. Specifically, <u>this bill</u> provides that: [¶] . . . [¶] . . . An action against any *person or entity* other than the *sexual abuser* would have to be commenced on or before the plaintiff's 26th birthday. [¶] . . . [¶] <u>The Senate amendments</u>: [¶] 1) Limit the defendants against whom the statute of limitations is extended to the following: a) the perpetrator; or b) *any person or entity* who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the abuse which resulted in the injury; or c) any *person or entity* whose intentional act was the cause of the injury. [¶] 2) Require that a plaintiff sue the *third party defendant* on or before the plaintiff's 26th birthday." (Assem. Conc. Sen. Amends. to Assem. Bill No. 1651 (1997–1998 Reg. Sess.) as amended Aug. 19, 1998, p. 1, italics added.)

The separate references to an "entity" and a "person" in the legislative history show that in 1998 the Legislature intended to distinguish an entity from a person, and to apply the 26th birthday cutoff to an action against a third party defendant such as the Boy Scouts, when it added subdivision (a)(1)–(3) and former subdivision (b) (now (b)(1)) to section 340.1. Thus, as the California Supreme Court stated in *Quarry* with regard to the 1998 amendments, "The Legislature made an obvious choice to use language for claims against third party defendants that differed markedly from the language it still used for claims against direct perpetrators. [Citation.]" (*Quarry, supra,* 53 Cal.4th at p. 966.) We find no indication that the Legislature intended the word "person" in section 340.1, subdivision (a)(1) to include any perpetrator of childhood sexual abuse other than a natural person.

For these reasons, we determine that plaintiffs' fifth cause of action for intentional infliction of emotional distress against the Boy Scouts does not fall within section 340.1, subdivision (a)(1) and is time-barred under the applicable statute of limitations, section 340.1, subdivision (b)(1), because

their original complaint was filed after plaintiffs' 26th birthdays. We therefore conclude that the trial court erred in ruling that the claim for intentional infliction of emotional distress was timely in overruling the Boy Scouts' demurrer.

## V. DISPOSITION

The petition for writ of mandate is denied as moot. The parties are to bear their own costs in this original proceeding.

Premo, Acting P. J., and Mihara, J., concurred.